**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**KAREN HUDES,**

    **Plaintiff,**

       **v.**

**AETNA LIFE INSURANCE CO., et al.,**

    **Defendants.**

Civil Action No. 10-1444 (JEB)

---

<u>**MEMORANDUM OPINION**</u>

      Plaintiff Karen Hudes worked as a lawyer at the World Bank for twenty years before being terminated. Instead of filing a straightforward wrongful-termination suit, she has tossed together in this *pro se* action a welter of claims under myriad federal statutes against the Bank, its accountants and outside counsel, and her insurance company. Because Plaintiff's Second Amended Complaint fails to state any claims for which this Court can grant her relief – either because of a lack of subject matter jurisdiction or a failure to plead supporting facts – the Court will dismiss this suit.

**I.**     **Factual Background**

      The International Bank for Reconstruction and Development (IBRD), commonly known as the World Bank, is "an international financial institution whose purposes include assisting the development of its member nations' territories, promoting and supplementing private foreign investment, and promoting long range balanced growth in international trade." <u>Mendaro v. The World Bank</u>, 717 F.2d 610, 611 (D.C. Cir. 1983). The World Bank achieves these objectives by "mak[ing] direct loans to its members or to businesses located in the territories of its members; participat[ing] in and guarantee[ing] loans placed through private investment channels; issu[ing],

1

guarantee[ing], and acquir[ing] its own securities; and invest[ing] in and guarantee[ing] other securities." Id. at 612. To carry out its work, the Bank has thousands of employees who are citizens of more than 100 different countries. Id.

As set forth in her tangled Second Amended Complaint, which must be presumed true for purposes of this Motion, Plaintiff was employed as a lawyer in the legal department of the Bank. See Sec. Am. Compl., ¶ 11. While there, she worked on the Philippines Banking Sector Reform Loan (BSRL). Id. She alleges that in the course of this work, she "requested the [Bank's] resident Country Director in the Philippines to inform the government of the Philippines that a waiver from the Board of Executive Directors would be required in order to disburse the second and third tranches of [the Bank's] loan to the government." Id. Instead of taking this action, "the Country Director reassigned Plaintiff from the Philippines desk one week before the decision meeting on the BSRL." Id. She does not indicate precisely when these events occurred; however, paragraph 12 of the Second Amended Complaint suggests this was during or prior to 2007. Plaintiff alleges that she "subsequently reported to [the Bank's] Operations Evaluation Department (OED) and Audit Committee then-President Joseph Estrada's breach of the Philippines securities laws and corrupt sale of shares owned by Philippines government pension funds in Philippines National Bank . . . ." Id., ¶ 12. Thus began the controversy Plaintiff describes with her former employer.

Plaintiff identifies herself as a "gatekeeper attorney" and a "whistleblower," id., ¶¶ 6, 20, and alleges that the Bank "terminated [her] employment illegally in retaliation for reporting corruption and securities law violations to [the Bank's] Audit Committee and US Congressional committees charged with oversight" of the Bank. Id., ¶ 13. Although Plaintiff does not present anything close to a coherent timeline or description of the events surrounding her termination

from the Bank, the Court infers from paragraphs 14, 15, and 18 of the Second Amended Complaint that she was terminated in late July or early August of 2007.  See also ALJ's Opinion and Order, Hudes v. IBRD, No. 2010-SOX-00012, 2010 DOLSOX LEXIS 15 at *1 (Dep't of Labor, Feb. 22, 2010) (referencing "Complainant's 2007 discharge").[1]

As best the Court can discern, Plaintiff alleges that at some point, the Bank required her "submission to [a] psychological fitness for duty examination[]."  Id., ¶ 25.  Plaintiff further states that in July 2007, a doctor from the Bank's health department, Dr. Demure, obtained her confidential medical records from her insurance company, Aetna, apparently without her "express authorization."  Id., ¶¶ 14-15.  Plaintiff alleges that Dr. Demure then called her treating physicians and "defamed Plaintiff and damaged Plaintiff's professional reputation with knowingly false statements."  Id., ¶ 15.  Plaintiff does not plead the content of any such statements.  Upon learning of his calls to her physicians, Plaintiff alleges that she "informed Dr. Demure that he was violating medical ethics and breaking the law," after which "Dr. Demure retaliated by recommending that Plaintiff be denied access to [the Bank's] facilities" and "maliciously request[ing] Plaintiff's physicians to inform [her] that she was barred" from the Bank's facilities "for medical reasons."  Id., ¶¶ 15, 18.  Plaintiff was terminated the following week.  Id., ¶ 18.

Plaintiff's dispute with the World Bank over its internal operations did not end, however, with her termination.  Plaintiff alleges that on February 27, 2009, she disclosed "ongoing control lapses" at the Bank to the Chairman of the Bank's Audit Committee.  Id., ¶ 4.  Following this disclosure, the Audit Committee hired Defendant KPMG "to conduct an external audit of [the Bank's] internal control over financial reporting."  Id.  Plaintiff alleges that "[b]ecause KPMG

<hr />

[1] The Court may take judicial notice of facts in public records of other proceedings.  See Covad Communications Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).

has prevented [her] from contacting KPMG's audit team and from considering [her] reports to the Audit Committee and the US Congress of [the Bank's] control lapses, Defendant KPMG is unable to form an opinion on the effectiveness of [the Bank's] internal control over financial reporting." Id.

Plaintiff further alleges that on August 20, 2009, the "Chairman of the Board's Committee on Governance and Administrative Matters, after consultation with other members on the Board, requested Plaintiff's reinstatement in order to correct [the Bank's] internal control lapses and corporate governance problems." Id., ¶ 8.  On September 2, 2009, however, the Bank allegedly "barred Plaintiff entry to [the Bank's] headquarters." Id.

The current action has both administrative and judicial origins.  On October 13, 2009, Plaintiff filed a complaint against the Bank with the Occupational Safety and Health Administration in the Department of Labor.  Id., ¶ 9.  Plaintiff indicates that her administrative complaint contained a claim under the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745 (2002), codified in relevant part at 18 U.S.C. § 1514A, "based upon two adverse employment actions": the Bank's "refusing to reinstate Plaintiff [at the Bank] and barring Plaintiff from [the Bank's] premises."  Sec. Am. Compl., ¶ 9.  On December 17, 2009, Plaintiff filed a complaint against Aetna Corp., John and Jane Does 1-100, and Mark Schreiber – a "consultant" to the Bank, see id., ¶ 20 – in U.S. District Court for the District of Maryland, alleging violations of Sarbanes-Oxley and the Health Insurance Portability and Accountability Act, Pub. L. 104-191, 110 Stat. 1936 (1996) (HIPAA).  See ECF No. 1.  On March 4, 2010, Plaintiff "informed the Administrative Review Board of the U.S. Department of Labor that she was removing her Sarbanes-Oxley claim" against the World Bank to federal court.  Sec. Am. Compl., ¶ 10.  The next day, Plaintiff amended her complaint in the District of Maryland to

substitute Aetna Life Insurance Co. for Aetna Corp. and to add the World Bank as a defendant. See ECF No. 14. On August 23, 2010, the U.S. District Court for the District of Maryland granted Aetna's Motion to Transfer, sending Plaintiff's case to this Court. See ECF No. 39.

Currently before the Court is Plaintiff's Second Amended Complaint, filed October 15, 2010. In this, her third attempt to plead this suit, Plaintiff alleges claims against the World Bank, Aetna Life Insurance Co., Mark Schreiber, KPMG LLP, and John and Jane Does 1-99. She never, however, specifically sets out her causes of action or lists counts, but instead mentions in various places claims for violations of federal and state law including: the Securities Act of 1933, 15 U.S.C. § 77a *et seq*. (Securities Act); the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq*. (Exchange Act); the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376 (2010) (Dodd-Frank); Sarbanes-Oxley; and HIPAA. Sec. Am. Compl., ¶ 1.

All Defendants have filed Motions to Dismiss, which the Court now considers. [2]

## II.    Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). This standard governs the Court's considerations of Defendants' Motions under both Rules 12(b)(1) and 12(b)(6). See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a

---

[2] The Court has reviewed Plaintiff's Second Amended Complaint, Defendant World Bank's Motion to Dismiss, Defendant Aetna Life Insurance Co.'s Motion to Dismiss, Defendant Mark E. Schreiber's Motion to Dismiss, Defendant KPMG's Motion to Dismiss, Plaintiff's Combined Opposition, and each Defendant's Reply thereto.

motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 925-26 (D.C. Cir. 1984) (same). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject matter jurisdiction to hear her claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, L.L.C. v. E.E.O.C., 409 F.3d 359, 366 (D.C. Cir. 2005) ("given the present posture of this case – a dismissal under Rule 12(b)(1) on ripeness grounds – the court may consider materials outside the pleadings").

Rule 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted." When the sufficiency of a complaint is challenged under Rule 12(b)(6), the factual allegations presented in it must be presumed true and should be liberally construed in plaintiff's favor. Leatherman v. Tarrant Cty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993). The notice pleading rules are "not meant to impose a great burden on a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and he or she must thus be given every favorable inference that may be drawn from the allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Twombly, 550 U.S. at 555, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotation omitted). Plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.

III.    Analysis

Because each of the four Defendants has separately moved for dismissal and set forth different bases, the Court will address each in turn. Ultimately, despite three tries to articulate her causes of action, Plaintiff is simply unable to do so. As a result, the Court will dismiss certain claims with prejudice and others without.

A.      The World Bank

        1.      *Wrongful Termination*

At bottom, Plaintiff's allegations against the World Bank amount to a claim for wrongful

termination.  Plaintiff alleges that the Bank "terminated [her] employment illegally in retaliation

for reporting corruption and securities law violations to [the Bank's] Audit Committee and US

Congressional committees charged with oversight of" the Bank.  Sec. Am. Compl., ¶ 13.  For

this violation, Plaintiff requests relief relating to her employment status: "reinstatement in

Defendant IBRD's Legal Department and an award of monetary damages in the amount of

$1,000,000 as compensation for Defendant IBRD's illegal retaliation against Plaintiff and

damage to her career."  Id., ¶ 29(1).  The Court, however, must dismiss Plaintiff's claim for lack

of subject matter jurisdiction because the World Bank is immune from such suits by current and

former employees.  Although, as discussed below, the Court declines to exercise pendent

jurisdiction over all other non-federal claims against all Defendants, it addresses this one because

the Bank's immunity defense is also applicable to the federal claims asserted against it.

The World Bank has long been recognized as an "international organization[]" covered

by the International Organizations Immunities Act (IOIA).  See Exec. Order No. 9751, 11 Fed.

Reg. 7713 (July 11, 1946).  The IOIA provides: "International organizations, their property and

their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit

and every form of judicial process as is enjoyed by foreign governments, except to the extent that

such organizations may expressly waive their immunity for the purpose of any proceedings or by

the terms of any contract."  22 U.S.C. § 288a(b).  The World Bank thus enjoys immunity from

suits such as Plaintiff's unless it has expressly waived that immunity.  See Atkinson v. Inter-

American Development Bank, 156 F.3d 1335, 1341 (D.C. Cir. 1998) (Bank's immunity is

absolute immunity foreign sovereigns enjoyed in 1945).

Plaintiff argues that the Bank has, through its Articles of Agreement, waived its immunity in the present case.  See Opp. at 13-14.  Article VII, Section 3, entitled "Position of the Bank with Regard to judicial Process," provides:

> Actions may be brought against the Bank only in a court of competent jurisdiction in the territories of a member in which the Bank has an office, has appointed an agent for the purpose of accepting service or notice of process, or has issued or guaranteed securities.  No actions shall, however, be brought by members or persons acting for or deriving claims from members.  The property and assets of the Bank shall, wheresoever located and by whomsoever held, be immune from all forms of seizure, attachment or execution before the delivery of final judgment against the Bank.

Plaintiff would have the Court interpret Article VII, Section 3 broadly, arguing that judicial precedent upholding the Bank's immunity from suit "does not apply to a bondholder entitled to accurate financial statements and financial attorney assisting the Board of that issuer, the SEC, Senate and House of Representatives to investigate corporate governance irregulatries, internal control lapses, and violations of securities laws."  Opp. at 14.  The only authority Plaintiff cites for her position is Sarbanes-Oxley § 307, under which she finds the "obligation[] of in-house counsel . . . [to act] 'in the public interest and for the protection of investors.'"  Opp. at 14 (quoting 15 U.S.C. § 7245).  In fact, § 307 is an authorizing statute directing the SEC to promulgate rules of professional responsibility for lawyers appearing before the Commission and in no way creates, either explicitly or implicitly, a waiver of the World Bank's immunity from suit under the IOIA.

Although a cursory examination of Article VII, Section 3 may not yield an obvious answer, the D.C. Circuit has expressly considered and rejected Plaintiff's argument that Article VII, Section 3 creates a waiver of immunity for wrongful-termination and employment-discrimination claims.  See Mendaro, 717 F.2d 610.  In that case, Mendaro sued the World Bank alleging that while employed there, she was the victim of sexual harassment and discrimination,

and was improperly denied a promotion to which she was entitled.  Id. at 612.  After complaining

to the Bank about these problems, she was fired.  Id.  Mendaro sued the Bank, alleging

discrimination and retaliatory termination in violation of Title VII of the Civil Rights Act of

1964.  The court dismissed Mendaro's claim for lack of subject matter jurisdiction, finding: "One

of the most important protections granted to international organizations is immunity from suits

by employees of the organization in actions arising out of the employment relationship."  Id. at

615.  In Mendaro, the D.C. Circuit considered the scope of the Article VII, Section 3 waiver and

observed that, when read in context, "the World Bank's members could only have intended to

waive the Bank's immunity from suits by its debtors, creditors, bondholders, and those other

potential plaintiffs to whom the Bank would have to subject itself in order to achieve its

chartered objectives."  Id.  The language of Section 3's waiver, moreover, "suggests that the

Bank's immunity is limited only to the extent necessary to further its objectives."  Id. at 618.

The Bank's waiver should thus be construed as applying only when "an insistence on immunity

would actually prevent or hinder the organization from conducting its activities," such as

participating in commercial transactions with external third parties.  Id. at 617.

        The D.C. Circuit has articulated a formula to evaluate whether Section 3 waives the

Bank's immunity from a given lawsuit: "[T]he Bank's articles waive the Bank's immunity from

actions arising out of the Bank's external relations with its debtors and creditors.  However, a

waiver of immunity to suits arising out of the Bank's internal operations, such as its relationship

with its own employees, would contravene the express language of Article VII section 1."  Id. at

618 (emphasis in original).  In fact, that court has more recently affirmed the "default rule [to be

applied]: the Bank's immunity should be construed as not waived unless the particular type of

suit would further the Bank's objectives."  Atkinson, 156 F.3d at 1338 (emphasis in original); see

also <u>Osseiran v. International Finance Corp.</u>, 552 F.3d 836 (D.C. Cir. 2009) (reaffirming

<u>Mendaro</u>'s distinction on waiver of immunity between suits related to international

organization's internal and external affairs). Like the plaintiff in <u>Aguado v. Inter-American</u>

<u>Development Bank</u>, 85 Fed. Appx. 776 (D.C. Cir. 2004), Plaintiff Hudes has "failed to show that

this suit furthers the Bank's objectives so as to distinguish her claims from other employment

disputes." <u>Id.</u> at 777 (affirming district court ruling that World Bank was immune from

wrongful-termination suit by former employee) (citing <u>Mendaro</u>, 717 F.2d at 615-19; <u>Broadbent</u>

<u>v. OAS</u>, 628 F.2d 27, 34-35 (D.C. Cir. 1980)).

Nor can Plaintiff's status as a holder of the Bank's bonds save her wrongful-termination

claim. Plaintiff's Second Amended Complaint makes clear that this claim against the Bank

arises from her <u>internal</u> employment relationship with the Bank – she alleges the Bank

"terminated [her] employment illegally," <u>id.</u>, ¶ 13, and she requests reinstatement as relief, <u>id.</u>, ¶

29(1) – and not from her <u>external</u> status as a bondholder. Plaintiff has not, for example, alleged

that the Bank has failed to honor her bonds. Because the Bank's waiver of immunity is to be

read narrowly and applied "only to the extent necessary to further its objectives," <u>Mendaro</u>, 717

F.2d at 618, the Court cannot permit Plaintiff to use her status as a bondholder to circumvent the

Bank's immunity from employment-related suits. Such an outcome would render the Bank's

immunity meaningless; would-be plaintiffs would merely need to purchase the Bank's bonds in

order to file suit. This cannot be what the Bank's members intended in crafting its Articles of

Agreement.

                2.     *Sarbanes-Oxley & Dodd-Frank*

Plaintiff disputes the Bank's characterization of her claim as "essentially an

employment action for wrongful termination." Opp. at 14. Indeed, in her Second Amended

Complaint, Plaintiff identifies her claim that the Bank committed "two adverse employment

actions[:] . . . refusing to reinstate Plaintiff and barring Plaintiff from Defendant IBRD's premises" as her "Sarbanes-Oxley claim." Sec. Am. Compl., ¶ 9; see also id., ¶¶ 6, 8. Plaintiff alleges that she is entitled to "employee protection" under Sarbanes-Oxley and the Dodd-Frank Act as a "gatekeeper attorney." Id., ¶ 6. Rather than stating a simple wrongful-termination claim, Plaintiff argues, her suit "furthers the purposes and operations of IBRD through restoring the access of the Board of Executive Directors to information necessary for them to oversee IBRD's operations in compliance with IBRD's Articles of Agreement." Opp. at 14. Plaintiff thus attempts to distinguish the present case from Mendaro and its progeny by portraying her claims against the Bank as external rather than internal matters.

The Court need not decide, however, whether Plaintiff may make a successful end-run around the IOIA by invoking whistleblower protections provided by Sarbanes-Oxley and the Dodd-Frank Act. Even assuming that she could, Plaintiff has failed to state any claim under either of those statues for which this Court can grant her relief.

> a.      Sarbanes-Oxley

The Sarbanes-Oxley Act contains "[w]histleblower protection for employees of publicly traded companies," stating:

> No company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d))[,] . . . or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee . . . .

18 U.S.C. § 1514A(a).

The World Bank argues that it is not subject to Sarbanes-Oxley's whistleblower-protection provisions because it is not a "company" for purposes of § 1514A. See IBRD Mot. at

14.  Indeed, by its plain language, § 1514A applies only to a "company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d))." Section 12 of the Exchange Act requires the registration of all non-exempted securities. 15 U.S.C. § 78*l*. Under 22 U.S.C. § 286k-1(a), securities issued by the World Bank are explicitly "deemed to be exempted securities" under both the Securities Act and the Exchange Act, and are thus not subject to the registration requirements of § 12. Similarly, § 15(d) of the Exchange Act requires issuers to file reports only with respect to registered securities. 15 U.S.C. § 78*o*(d)(1). As a result, the World Bank is not a "company" within the meaning of § 1514A. Since Sarbanes-Oxley's whistleblower-protection provisions do not apply to the World Bank as a matter of law, Plaintiff may not seek their enforcement against the Bank in this Court.

### b.  Dodd-Frank Act

Without identifying a particular provision that she alleges the Bank violated, Plaintiff's Second Amended Complaint also references the recently enacted Dodd-Frank Act. See, e.g., Sec. Am. Compl., ¶¶ 1, 2, 6, 10, 24, 28. In so doing, Plaintiff pleads, "Dodd-Frank amended Sarbanes-Oxley whistleblower protection provisions by removing the requirement for Administrative Agency proceedings before filing claims directly in U.S. District Court." Id., ¶ 10. In other words, she appears to invoke the Dodd-Frank Act to counter the Bank's argument that this Court lacks jurisdiction over her Sarbanes-Oxley claim because she did not exhaust her administrative remedies before bringing suit in district court, an argument this Court did not need to reach in dismissing that claim against the Bank.

For example, Plaintiff states in her Opposition: "Dodd-Frank permits cases alleging violations of Sarbanes-Oxley to be filed directly in US District Court[,]" and describes the Dodd-

Frank Act as a "[j]urisdictional statute[]" "providing additional justification for Plaintiff's removal to US District Court." Opp. at 2. In a later section of her Opposition, she argues, apparently in the alternative, "It is not necessary to determine the application of Dodd-Frank to determine whether Plaintiff was entitled to transfer her case to District Court." Id. at 19. To the extent Plaintiff relies on Dodd-Frank as a jurisdictional hook to bring her Sarbanes-Oxley claim against the Bank before this Court, her efforts are unavailing. As explained in Section III.A.2.a, *supra*, Plaintiff's Sarbanes-Oxley claim against the Bank fails irrespective of whether or not she has properly exhausted her administrative remedies.

If her reliance on Dodd-Frank is substantive, rather than jurisdictional, she fares no better. The only provision of Dodd-Frank Plaintiff ever actually cites is § 924(c), codified at 15 U.S.C. § 78*u*-7(c). See Opp. at 21 n.17. Section 924(c) addresses Dodd-Frank's "bounty program," through which whistleblowers may receive awards from the SEC for providing original information relating to a violation of the securities laws to the Commission. See Dodd-Frank § 922(b)(1), codified at 15 U.S.C. § 78*u*-6(b)(1). Section 78*u*-7(c) provides:

> A whistleblower may receive an award pursuant to section 21F of the Securities Exchange Act of 1934, as added by this subtitle, regardless of whether any violation of a provision of the securities laws, or a rule or regulation thereunder, underlying the judicial or administrative action upon which the award is based, occurred prior to the date of enactment of this subtitle.

A reliance on § 924(c), however, ignores § 924(b), which explains that for information to be "original," and therefore entitle the provider to an award, it must be "provided by the whistleblower after July 21, 2010." § 78*u*-7(b) (emphasis added).

Dodd-Frank's "bounty program," furthermore, is inapplicable to Plaintiff's claims in the present case for two additional reasons: first, she never seeks an award for her alleged whistleblowing activities, see Sec. Am. Compl., ¶ 29 (Relief); and second, even if she did, this

Court would have no jurisdiction over such a claim. Under 15 U.S.C. § 78*u*-6, which implements the whistleblower-award program Plaintiff cites, "[a]ny determination made under this section, including whether, to whom, or in what amount to make awards, shall be in the discretion of the [SEC]." § 78*u*-6(f). Any appeals of such determinations are to be made not to this Court, but rather directly to the appropriate U.S. Court of Appeals. Id.

Finally, to the extent Plaintiff relies on some other unnamed provision of Dodd-Frank that she does not set forth in her Second Amended Complaint, such a claim would face the hurdles of retroactivity, see Landgraf v. USI Film Products, 511 U.S. 244, 265, 278 (1994) (recognizing "traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment"), and immunity. See Section III.A.1, *supra*. The Court will thus dismiss Plaintiff's Dodd-Frank Act claim against the Bank.

3. *Other Claims*

If Plaintiff is somehow asserting causes of action for invasion of privacy or defamation against the Bank under a *respondeat superior* theory of liability for Dr. Demure's actions, see Sec. Am. Compl., ¶ 15, the Court dismisses such claims without prejudice for the reasons set forth in Section III.B, *infra*, – namely, declining to exercise pendent jurisdiction over state-law claims.

B. Schreiber

Despite this being Plaintiff's third attempt at pleading claims against Defendant Schreiber, his role in the events underlying this lawsuit remains shrouded in mystery. All that Plaintiff can muster against Schreiber is that he "is a hired gun who has defamed Plaintiff, abused Plaintiff's confidential medical records, inflicted emotional distress on Plaintiff and damaged Plaintiff's career in violation of HIPAA, Sarbanes-Oxley and Dodd-Frank." Sec. Am. Compl., ¶ 2. She asserts that he was hired "as a consultant" "to defame Plaintiff," id., ¶ 20; that

he improperly "review[ed] her whistleblower retaliation claims," id.; that he committed "violations of Plaintiff's federal and state privacy rights," id., ¶ 23; and that he is "running roughshod over well-accepted principles of medical and legal ethics, laws regulating the confidentiality of medical records, and Sarbanes-Oxley." Id., ¶ 28. Finally, Plaintiff asserts that her "career has been damaged by Defendant Schreiber's breach of Sarbanes-Oxley and Dodd-Frank, HIPAA, and General Sections 4-302(a) and (d) of the Annotated Code of Maryland." Id. The only other piece of information the Court can glean about Schreiber from Plaintiff's Second Amended Complaint, factual or otherwise, is that Plaintiff identifies him in her caption as being affiliated with "Edwards Angell Palmer & Dodge" of Boston, Massachusetts.

Understandably unable to decipher what he has allegedly done wrong, Defendant Schreiber now moves to dismiss all of Plaintiff's "claims" against him on the ground that, *inter alia*, she has failed to plead facts sufficient to support a claim for which relief can be granted. See Schreiber Mot. at 2-3. The Court agrees.

In resolving a Rule 12(b)(6) motion to dismiss, "'the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.'" Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (quoting Stewart v. Nat'l Educ. Ass'n., 471 F.3d 169, 173 (D.C. Cir. 2006)). Courts thus exclude any material presented outside the pleadings. See Fed. R. Civ. P. 12(d).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" As set forth in Section II, *supra*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 570). Although "detailed factual allegations" are not necessary at this stage, Twombly,

550 U.S. at 555, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A complaint that offers only "'labels and conclusions'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. While the Court must accept well-pled factual allegations as true, the Court need not accept "'a legal conclusion couched as a factual allegation,'" nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986).

Plaintiff's allegations against Schreiber fall woefully short of this standard. Nowhere does she plead the facts necessary to support any cause of action under any of the farrago of federal and state statutes she accuses him of violating. For example, in the District of Columbia, to succeed on a defamation claim, a plaintiff must show:

> "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."

Croixland Properties Ltd. Partnership v. Corcoran, 174 F.3d 213, 215 (D.C. Cir. 1999) (quoting Crowley v. North Am. Telecomm. Ass'n, 691 A.2d 1169, 1172 n.2 (D.C. 1997)). Plaintiff's Second Amended Complaint does not allege a single statement made by Schreiber, let alone contain facts sufficient to support the other elements of a claim for defamation. Plaintiff's nebulous and conclusory allegations surrounding Schreiber's conduct fare no better when evaluated against the elements Plaintiff must prove to establish violations of Sarbanes-Oxley, the Dodd-Frank Act, or HIPAA.

Nor is this the type of circumstance where a typical *pro se* Plaintiff falls short of certain technical pleading standards. Although Plaintiff brings this case *pro se*, she has stated in previous pleadings filed in this case that she is a lawyer with a degree from Yale Law School, Am. Compl., ¶ 12, and twenty years of experience in the Legal Department at the World Bank. Sec. Am. Compl., ¶ 11. The Court therefore finds she is not entitled to the relaxed pleading standards generally afforded *pro se* plaintiffs. See Ning Ye v. Holder, 644 F. Supp. 2d 112, 116 (D.D.C. 2009) ("plaintiff is a practicing attorney so there is no reason to afford him the latitude ordinarily accorded to the typical *pro se* plaintiff").

Although the Court could conceivably permit Plaintiff to amend her Complaint once again to set out facts sufficient to support her various federal claims against Schreiber, the Court declines to do so. She has already had three attempts, and it is readily apparent that if she had a federal claim against him, she would have articulated it by now. Instead, it is far more likely she has no actionable federal claim. See James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (court can deny motion to amend complaint as futile if proposed claim would not survive motion to dismiss). Plaintiff is not entitled to protection under Sarbanes-Oxley's whistleblower-protection provisions because, as explained in Section III.A.2, *supra*, Sarbanes-Oxley only applies to publicly traded companies. As Schreiber was never her employer, she cannot state a claim against him for violating the Dodd-Frank Act's whistleblower-protection provisions. See Dodd-Frank § 922(h)(1)(A) ("No employer may discharge . . .") (emphasis added). Finally, as explained in Section III.D, *infra*, HIPAA does not provide a private right of action. Any amended HIPAA claim against Schreiber could thus not survive a Rule 12(b)(1) motion to dismiss and would therefore be futile. See Johnson v. Quander, 370 F. Supp. 2d 79, 100 (D.D.C. 2005), aff'd, 440 F.3d 489 (D.C. Cir. 2006) ("[B]ecause no private right of action

exists under the HIPAA, this Court does not have subject matter jurisdiction over this claim and it must be dismissed.").

Although even amendment could not rescue her federal claims, it is conceivable Plaintiff could make out state or common-law causes of action if permitted further opportunities. As a result, to the extent Plaintiff asserts claims against Schreiber under General Sections 4-302(a) and (d) of the Maryland Code or on other state common-law grounds, the Court declines to address the merits of Defendant's motion. Instead, the Court will dismiss those claims without prejudice, allowing Plaintiff to pursue them, if she so wishes, in an appropriate state court.

Federal district courts are given supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966), quoted in Shekoyan v. Sibley Int.l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise pendent jurisdiction over state claims, federal courts should consider "judicial economy, convenience and fairness to litigants." Id. Nonetheless, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48

F.3d 1260, 1267 (D.C. Cir. 1995) (finding the discretion set out in <u>Carnegie-Mellon Univ.</u> "unaffected by the subsequent enactment of 28 U.S.C. § 1367(d), in the Judicial Improvements Act of 1990").

Here the factors weigh against retention of the case. All federal claims against all Defendants are being dismissed. This case has not progressed in federal court past Defendants' Motions to Dismiss. Indeed, answers have not even been filed, and the Court has developed familiarity with neither the parties nor the issues presented. <u>Cf.</u> <u>Schuler v. PricewaterhouseCoopers, LLP</u>, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Plaintiff will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. <u>See</u> <u>Shekoyan</u>, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system.") (internal citation omitted). Therefore, to the extent the statute of limitations had not already run on Plaintiff's state and common-law claims at the time she filed this suit, this Court's decision to decline to exercise its pendent jurisdiction over those claims will not prejudice her. The Court therefore will dismiss those claims without prejudice.

C.      <u>KPMG</u>

Defendant KPMG is similarly situated to Schreiber inasmuch as its conduct is at best ancillary to Plaintiff's central allegations against the Bank. As a result, KPMG has moved both to sever and to dismiss Plaintiff's claims against it pursuant to Federal Rules of Civil Procedure

21 and 12(b)(6).  Because the Court finds that Plaintiff's claims against KPMG are too infirm to

survive, dismissal is more appropriate here than severance.

According to Plaintiff's Second Amended Complaint, "[a]fter Plaintiff disclosed IBRD's

ongoing control lapses to the Chairman of IBRD's Audit Committee on February 27, 2009,

Defendant KPMG . . . was hired by IBRD's Audit Committee to conduct an external audit of

IBRD's internal control over financial reporting."  Sec. Am. Compl., ¶ 4.  Plaintiff's theory of

liability against KMPG arises from this audit.  She claims:

> KPMG's audit of IBRD fails to report that IBRD does not have
> effective internal controls, because KPMG's audit does not comply
> with the Public Company Accounting Oversight Board's Auditing
> Standards Nos. 2 and 5 in violation of Section 11 of the Securities
> Act, 15 U.S.C. §77(k)(a)(4).     Plaintiff and IBRD's other
> bondholders are unable to rely upon the effectiveness of KPMG's
> audit of IBRD's internal controls or the accuracy of IBRD's
> financial reports.   Because KPMG has prevented Plaintiff from
> contacting KPMG's audit team and from considering Plaintiff's
> reports to the Audit Committee and the US Congress of IBRD's
> control lapses, Defendant KPMG is unable to form an opinion on
> the effectiveness of IBRD's internal control over financial
> reporting.

Id.  Plaintiff thus attempts to state a claim against KPMG under § 11 of the Securities Act.

Although Plaintiff cites the Securities Exchange Act of 1934 as one of the bases of this Court's

jurisdiction over her claims, id., ¶ 1, Plaintiff concedes in her Opposition that she "does not claim

[KPMG committed] securities fraud[.]"  Opp. at 19.

Section 11 of the Securities Act, codified at 15 U.S.C. § 77k, provides for "[c]ivil

liabilities on account of false registration statement[,]" stating:

> In case any part of the registration statement, when such becomes
> effective, contained an untrue statement of a material fact or
> omitted to state a material fact required to be stated therein or
> necessary to make the statements therein not misleading, any person
> acquiring such security (unless it is proved that at the time of such
> acquisition he knew of such untruth or omission) may, either at law
> or in equity, in any court of competent jurisdiction, sue . . . every

accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him[.]

§ 77k(a)(4). Under 22 U.S.C. § 286k-1, all securities issued by the World Bank are explicitly deemed to be "exempted securities within the meaning of" 15 U.S.C. § 77c(a)(2). The Domestic Securities Subchapter of Title 15, under which § 77k is also found, "shall not apply to any . . . securities" exempted within the meaning of § 77c(a)(2). § 77c(a). Securities Act § 11 (15 U.S.C. § 77k) is thus inapplicable to the World Bank bonds held by Plaintiff and audited by KPMG. Even were the Court to accept as true the allegation that KPMG "conducted an audit that "does not comply with the Public Company Accounting Oversight Board's Auditing Standards Nos. 2 and 5," Plaintiff could not state a claim for a violation of § 11 of the Securities Act because that section does not apply to bonds issued by the Bank. Sec. Am. Compl., ¶ 4.

D.     Aetna

The final Defendant that Plaintiff drags into this case is Aetna. She claims that "by disclosing [her] confidential medical records to Defendant IBRD," Aetna "breached its fiduciary duty, confidential relationship with Plaintiff, and invaded Plaintiff's privacy . . . in violation of HIPAA and the Annotated Code of Maryland, General Section 4-302(a)." Sec. Am. Compl., ¶ 3.

In seeking the dismissal of Plaintiff's HIPAA claim, Aetna argues that HIPAA provides no private right of action. Aetna Mot. at 4. Although the Court is aware of no binding circuit authority directly addressing this question, Aetna contends, and Plaintiff does not dispute, that "[e]very court to consider the issue has held that HIPAA provides no private right of action." Id. at 5 (citing Adams v. Eureka Fire Protection District, 352 Fed. Appx. 137, 138-39 (8th Cir. 2009)

("Courts have repeatedly held that HIPAA does not create a private right in implied-right-of-action cases."); <u>Acara v. Banks</u>, 470 F.3d 569, 571-72 (5th Cir. 2006) ("Every district court that has considered this issue is in agreement that the statute does not support a private right of action.") (collecting cases); <u>Runkle v. Gonzales</u>, 391 F. Supp. 2d 210, 237-38 (D.D.C. 2005) (dismissing HIPAA claim involving disclosure of federal employee's medical diagnoses by employer because HIPAA provides no private right of action); <u>Johnson v. Quander</u>, 370 F. Supp. 2d 79, 100 (D.D.C. 2005) (dismissing HIPAA claim involving disclosure of DNA information because no private right of action exists under HIPAA), <u>aff'd</u>, 440 F.3d 489, 503 (D.C. Cir. 2006); <u>Logan v. Dep't of Veterans Affairs</u>, 357 F. Supp. 2d 149, 155 (D.D.C. 2004) (dismissing HIPAA claim involving testimony regarding federal employee's mental health because HIPAA provides no private right of action)). In <u>Johnson</u>, the D.C. Circuit considered and affirmed the district court's ruling dismissing Johnson's HIPAA and other claims, "conclud[ing] that they are without merit and do not warrant separate discussion." 440 F.3d at 503.

Instead of creating a private right of action, HIPAA explicitly provides for the imposition of "penalt[ies] for failure to comply with [HIPAA's] requirements and standards" by the Secretary of Health and Human Services and, under certain circumstances, state attorneys general. <u>See</u> 42 U.S.C. § 1320d-5. Indeed, Plaintiff does not dispute the Secretary's prerogative to impose penalties for violations of HIPAA and apparently may attempt to persuade her to do so. <u>See</u> Opp. at 27. With respect to "Aetna's HIPAA Violations," Plaintiff states only:

> IBRD and Aetna have refused to inform Plaintiff which of her medical records have been provided to IBRD. Therefore, Plaintiff has not had the opportunity to identify Aetna's violations of [HIPAA]. At such time as all of Aetna's breaches in the confidentiality of Plaintiff's medical records have been identified, Plaintiff will determine whether to request <u>the Secretary of HHS to enforce Plaintiff's HIPAA rights</u>.

<u>Id.</u> (emphasis added).

23

In light of the statutory language of § 1320d-5 and the apparent consensus among the courts that have considered the question, this Court finds that Plaintiff has no private HIPAA right of action. Her claim against Aetna for violating HIPAA must therefore be dismissed.

Aetna's alleged violation of HIPAA is the only claim through which Plaintiff seeks to invoke this Court's original jurisdiction. Plaintiff's other allegations against Aetna, including a purported violation of General Section 4-302(a) of the Maryland Code, breach of fiduciary duty, and invasion of privacy, all arise under a state statute or common law. As with the state-law claims Plaintiff alleged against Defendant Schreiber, and for the reasons articulated in Section III.B, *supra*, the Court will decline to exercise its pendent jurisdiction over these claims. Plaintiff's state-law claims will thus be dismissed without prejudice.

IV.     **Conclusion**

As all of Plaintiff's federal causes of action against all Defendants do not survive scrutiny, they will all be dismissed with prejudice, along with Plaintiff's wrongful-termination claim. Her Maryland and state common-law claims will be dismissed without prejudice. An Order accompanying this Memorandum Opinion will, therefore, grant Defendants' Motions.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 30, 2011